## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SIDNEY RABINOWITZ, M.D., <br><br>       Plaintiff, <br><br>    -against- <br><br> UNITED HEALTHCARE INSURANCE COMPANY, <br><br>       Defendant. | Index No.: <br><br><br> **COMPLAINT** |

Plaintiff, Sidney Rabinowitz, M.D. ("Plaintiff"), on assignments from Paul S., Elissa P., Jordan M., Thomas V., Mackenzie C., Rosanna A., and Abigail B., by and through his attorneys, Schwartz Sladkus Reich Greenberg Atlas LLP, by way of Complaint against United Healthcare Insurance Company ("Defendant"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff is a New Jersey medical practitioner registered to do business in the State of New Jersey with a principal place of business at 305 Route 17 South, Paramus. New Jersey 07652.

2.  Upon information and belief, Defendant is engaged in administering health care plans or policies in the state of New Jersey.

3.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The insurance policies at issue are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The administrative remedies have been exhausted.

## FACTUAL BACKGROUND

4.    Plaintiff is a medical provider who specializes in plastic surgery and often treats patients in emergency situations.

5.    On January 24, 2019, Paul S. ("Patient 1") presented to the emergency department of Hackensack University Medical Center with severe headache and vomiting. (*See*, **Exhibit A**, attached hereto.)

6.    Since Patient 1 works with metal for his occupation, scanning x-rays of his hands were administered revealing a large retained foreign body granuloma in his left thumb. *Id*.

7.    Plaintiff performed emergency surgery on Patient 1 to remove the foreign body. *Id*.

8.    At the time of his treatment, Patient 1 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

9.    Patient 1 assigned his health insurance rights and benefits to Plaintiff. (See, **Exhibit B**, attached hereto.)

10.    Pursuant to the assignment of benefits, Plaintiff submitted a Health Care Financing Administration ("HCFA") medical bill to Defendant demanding payment for Patient 1's treatment in the total amount of $1,750.00. (*See*, **Exhibit C**, attached hereto.)

11.    As an out-of-network provider, Plaintiff does not have a network contract with Defendant that would determine or limit payment for Plaintiff's treatment of Defendant's members.

12.    On or around February 22, 2019, Defendant issued payment for Plaintiff's treatment of Patient 1 in the total amount of $731.57. (See, **Exhibit D**, attached hereto.)

13.     Defendant's explanation of benefits indicated that the remaining $1,018.43 in Plaintiff's charges were neither Defendant's nor Patient 1's responsibility even though Plaintiff never agreed to any such arrangement. *Id.*

14.     Plaintiff subsequently submitted multiple internal appeals to Defendant challenging Defendant's reimbursement as inconsistent with the terms of Patient 1's insurance plan.

15.     However, Defendant failed to issue any additional reimbursement in response to Plaintiff's internal appeals.

16.     On December 25, 2018, Plaintiff performed emergency surgery on Elissa P. ("Patient 2"), in Valley Hospital, after she suffered a complex eyelid laceration. (*See*, **Exhibit E**, attached hereto.)

17.     At the time of her treatment, Patient 2 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

18.     Patient 2 assigned her health insurance rights and benefits to Plaintiff. (*See*, **Exhibit F**, attached hereto.)

19.     Pursuant to the assignment of benefits, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $1,050.00. (*See*, **Exhibit G**, attached hereto.)

20.     On or around January 28, 2019, Defendant issued payment for Plaintiff's treatment of Patient 2 in the total amount of $444.96. (*See*, **Exhibit H**, attached hereto.)

21.     Defendant's explanation of benefits indicated that the remaining $605.04 in Plaintiff's charges were neither Defendant's nor Patient 2's responsibility even though Plaintiff never agreed to any such arrangement. *Id.*

22.     Plaintiff subsequently submitted multiple internal appeals to Defendant challenging Defendant's reimbursement as inconsistent with the terms of Patient 2's insurance plan.

23.     However, Defendant failed to issue any additional reimbursement in response to Plaintiff's internal appeals.

24.     On January 26, 2019, Plaintiff performed emergency surgery on Jordon M. ("Patient 3") who also suffered a laceration to her eyelid. (*See*, **Exhibit I**, attached hereto.)

25.     At the time of his treatment, Patient 3 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

26.     Patient 3 assigned her health insurance rights and benefits to Plaintiff. (*See*, **Exhibit J**, attached hereto.)

27.     Pursuant to the assignment of benefits, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $1,050.00. (*See*, **Exhibit K**, attached hereto.)

28.     On or around February 11, 2019, Defendant processed Plaintiff's claim by applying $443.94 towards Patient 3's deductible. (*See*, **Exhibit L**, attached hereto.)

29.     Defendant's explanation of benefits indicated that the remaining $606.06 in Plaintiff's charges were neither Defendant's nor Patient 3's responsibility even though Plaintiff never agreed to any such arrangement. *Id*.

30.     Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's reimbursement allotment as inconstant with the terms of Patient 3's insurance plan.

31.     However, Defendant failed to issue any additional reimbursement in response to Plaintiff's appeals.

32.     On August 11, 2019, Plaintiff performed emergency surgery on Thomas V. ("Patient 4") in Valley Hospital after he suffered a dog bite. (*See*, **Exhibit M**, attached hereto.)

33.     At the time of his treatment, Patient 4 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

34.     Patient 4 assigned his health insurance rights and benefits to Plaintiff. (*See*, **Exhibit N**, attached hereto.)

35.     Pursuant to the assignment of benefits, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $23,455.00. (*See*, **Exhibit O**, attached hereto.)

36.     On or around October 22, 2019, Defendant issued payment for Plaintiff's treatment of Patient 4 in the amount of $16,371.63. (*See*, **Exhibit P**, attached hereto.)

37.     Defendant's explanation of benefits represented that the remaining $7,099.50 in Plaintiff's charges were neither Defendant's nor Patient 4's responsibility even though Plaintiff never agreed to any such arrangement. *Id*.

38.     Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's reimbursement as an underpayment pursuant to Patient 4's insurance plan.

39.     However, Defendant failed to issue any additional payment in response to Plaintiff's appeals.

40.     On September 11, 2019, Plaintiff performed emergency surgery on Mackenzie C. ("Patient 5") in Valley Hospital after she was accidentally struck in the head with a shovel. (*See*, **Exhibit Q**, attached hereto.)

41.     At the time of her treatment, Patient 5 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

42.     Patient 5 assigned her health insurance rights and benefits to Plaintiff. (*See*, **Exhibit R**, attached hereto.)

43.     Pursuant to the assignment of benefits, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $8,355.00. (*See*, **Exhibit S**, attached hereto.)

44.     On or around October 1, 2019, Defendant issued payment for Plaintiff's treatment of Patient 5 in the amount of $696.18 and attributed an additional $174.05 towards Patient 5's coinsurance liability. (*See*, **Exhibit T**, attached hereto.)

45.     Defendant represented in its explanation of benefits that the remaining $7,484.77 in Plaintiff's charges were neither Defendant's nor Patient 5's responsibility even though Plaintiff never agreed to any such arrangement.

46.     Plaintiff submitted multiple internal appeals to Defendant, challenging Defendant's reimbursement as an underpayment pursuant to the terms of Patient 5's insurance plan.

47.     However, Defendant failed to issue any additional payment in response to Plaintiff's appeals.

48.     On August 1, 2019, Plaintiff performed an emergency abdominal wound closure on Rosanna A. ("Patient 6") in Hackensack University Medical Center. (*See*, **Exhibit U**, attached hereto.)

49.     At the time of her treatment, Patient 6 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

50.     Patient 6 assigned her health insurance rights and benefits to Plaintiff.

51.     Plaintiff submitted a HCFA medical bill to Defendant demanding payment for Patient 6's treatment in the total amount of $22,425.00. (*See*, **Exhibit V**, attached hereto.)

52.     Subsequently, Defendant issued payment for Patient 6's treatment in the amount of $12,103.20, applied an additional $2,719.54 towards Patient 6's deductible, and attributed an additional $2,162.26 towards Patient 6's coinsurance. (*See*, **Exhibit W**, attached hereto.)

53.     The remaining $5,440.00 in Plaintiff's charges were not covered by Defendant pursuant to Defendant's determination that those charges were in excess of usual and customary rates for Patient 6's treatment.

54.     Plaintiff submitted multiple internal appeals challenging Defendant's determination that Plaintiff's charges were more than usual and customary rates for Patient 6's treatment.

55.     However, Defendant failed to issue any additional reimbursement towards Patient 6's treatment.

56.     On May 28, 2017, Plaintiff performed emergency surgery on Abigail B. ("Patient 7") in Hackensack University Medical Center after she suffered a lip laceration. (*See*, **Exhibit X**, attached hereto.)

57.     At the time of her treatment, Patient 7 was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

58.     Patient 7 assigned her health insurance rights and benefits to Plaintiff. (*See*, **Exhibit Y**, attached hereto.)

59.     Pursuant to the assignment of benefits, Plaintiff submitted a HCFA medical bill to Defendant demanding payment for the performed treatment in the total amount of $4,150.00. (*See*, **Exhibit Z**, attached hereto.)

60.     On or around June 23, 2017, Defendant issued payment for Plaintiff's treatment of Patient 7 in the total amount of $918.05. (*See*, **Exhibit AA**, attached hereto.)

61.     Defendant represented in its explanation of benefits that the remaining $3,231.95 in Plaintiff's charges were neither Defendant's nor Patient 7's responsibility even though Plaintiff never agreed to any such arrangement. *Id*.

62.     Plaintiff submitted multiple internal appeals to Defendant, challenging Defendant's reimbursement as an underpayment pursuant to the terms of Patient 7's insurance plan.

63.     However, Defendant failed to issue any additional payment in response to Plaintiff's appeals.

64.     Upon information and belief, the insurance plans for Patient 1, Patient 2, Patient 3, Patient 4, Patient 5, Patient 6, and Patient 7 limit the members' cost-sharing for emergency treatment to copayment, coinsurance, and deductible charges.

65.     Upon information and belief, under the terms of the insurance plans of Patient 1, Patient 2, Patient 3, Patient 4, Patient 5, Patient 6, and Patient 7, members who undergo out-of-network emergency treatment are not responsible for any cost-sharing that would not apply had the treatment been performed by an in-network provider.

66.     The total combined amount charged for Plaintiff's emergency treatment of the 7 Patients referenced above was $62,235.00.

67.     When accounting for all the above referenced claims, the total amount applied towards member deductible, copayment, and coinsurance liability was $5,499.79.

68.     When accounting for all the above referenced claims, the total amount paid by Defendant was $31,265.59.

69.     When accounting for all the above referenced claims, the total amount Defendant should have paid under the applicable insurance plan terms was $56,735.21 instead of only $31,265.59.

70.     Plaintiff has thus been damaged in the total amount of $25,469.62.

71.     Accordingly, Plaintiff brings this action for recovery of the outstanding balance, and Defendant's breach of fiduciary duty.

<u>**COUNT ONE**</u>

**FAILURE TO MAKE PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)**

72.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 71 of the Complaint as though fully set forth herein.

73.     Plaintiff avers this Count to the extent ERISA governs this dispute.

74.     Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a benefits plan.

75.     Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from each Patient.

76.     Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

77.     Plaintiff is entitled to recover benefits due to each patient under any applicable ERISA plan or policy.

78.     As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

## COUNT TWO

### BREACH OF FIDUCIARY DUTY AND CO-FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a)

79.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 78 of the Complaint as though fully set forth herein.

80.     29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

81.     Plaintiff seeks redress for Defendant's breach of fiduciary duty and/or Defendant's breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a).

82.     29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

83.     Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1).

84.     29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

85.     Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

86.     Here, when Defendant acted to partially deny payment for the medical bill at issue, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

87.     Here, Defendant breached its fiduciary duties by: (1) failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations; (2) participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (3) failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and (4) wrongfully withholding money belonging to Plaintiff.

**CLAIM FOR RELIEF**

A.      For an Order directing Defendant to pay Plaintiff $25,469.62;

B.      For an Order directing Defendant to pay Plaintiff all benefits Patient 1, Patient 2, Patient 3, Patient 4, Patient 5, Patient 6 and Patient 7 would be entitled to under the applicable insurance plans or policies issued by Defendant;

C.      For compensatory damages and interest;

D.      For attorney's fees and costs of suit; and

E.      For such other and further relief as the Court may deem just and equitable.

Dated:  New York, NY
June 10, 2020

SCHWARTZ SLADKUS
REICH GREENBERG ATLAS LLP
*Attorneys for Plaintiff*

By: /s/ Michael Gottlieb
Michael Gottlieb
444 Madison Avenue
New York, NY 10022
(212) 743-7054